Nott, Cb. J.,
delivered the opinion of the court:
This case comes into court with a record which is not creditable to the administration of military justice.
1. First, it appears that the claimant, a lieutenant of volunteers, was tried by a court-martial of five members (the minimum number), the president of which was an officer in the Begular Army notwithstanding the seventy-seventh article of war, which provides that: “ Officers of the Begular Army shall not be competent to sit on courts-martial to try the officers or soldiers of other forces.” Without this officer the court consisted of less than the minimum number, and there could, consequently, be no court and no conviction.
2. It also appears that the court found the officer not guilty of the charge and specification upon which he had been tried.
3. It also appears that the record of the court-martial proceeding was transmitted to the commanding officer who convened the court, and was by him indorsed, “ Beturned for reconsideration.” Thereupon the court-martial immediately— that is to say, upon the same day, and with no additional evidence before it — found the officer guilty of the charge and specification, and sentenced him to be dismissed from the service. This sentence was approved and carried out.
4. It also appears that the record of the court-martial upon which the case was considered by the commanding general was attacked collaterally, it being shown aliunde the record that the testimony of a witness who was summoned, sworn, and examined before the court as a witness for the accused, and whose testimony tended to prove the accused innocent of the charge and specification, was wholly omitted from the record.
5. It finally appears that the charge was “ conduct unbecoming an officer and a gentleman,” and the specification was that the accused “ did gamble with enlisted men at camp near San Luis, Cuba, on or about the 11th day of October, 1898.” “ Conduct unbecoming an officer and a gentleman ” is a military offense not defined and not definable, but it involves necessarily the element of turpitude or dishonor. It ranks next on the roll of dishonor to cowardice. There is no latitude of discretion as to the punishment, which must always *282 be, upon conviction, dismissal from tbe service. The specification, “ did gamble with enlisted men ” on one occasion, “ the 11th day of October, 1898,” is a mere conclusion of law and not a specification of facts. To pay 25 cents for a ticket in a.raffle would be gambling; it might be conduct prejudicial to good order and military discipline, but it would be too absurd for argument to class it as “ conduct unbecoming an officer and a gentleman,” as involving turpitude or dishonor, or as rendering a man unfit to associate with honorable men and to continue to do duty in the Army.
The first objection raised to the conviction is that above set forth, that one of the members of the court-martial was an officer of the Regular Army, and that without him there was not a sufficient number of members present to constitute a court.
To this the defendant’s counsel makes two replies: First, that the officer was asked if he had any objection to any member of the court, and he answered “ No; ” second, that that member of the court was at the time absent from the Regular Army on leave and serving as a lieutenant-colonel of volunteers.
As against the first of these replies the counsel for the claimant contends that the member of the court came into the court-martial in the guise of an officer of volunteers; that the fact of his being in the Regular Army was unknown to the officer on trial, and that the waiver of the officer of personal objection to all members’ of the court could not make a member competent who by statute is expressly declared “ not competent.”
, As to the second ground 'taken by the defendant’s counsel, viz, that the relations of the member of the court with the Regular Army were for the time being suspended, it may be conceded that, if the purpose of the statute was administrative, if the object was to save the more valuable time of Regular Army officers, if there were two systems of law applicable to the regular and volunteer forces, etc., the suspension of an officer’s relations with the Regular Army might take the case out of the statute. But the. purpose of the statute undoubtedly was to obviate a prejudice which ex *283 isted in the minds of volunteers against Regular A.rmy officers — a belief that such officers -were prejudiced against volunteers; that they administered discipline and punishment with a severity that amounted to injustice. The language of the statute is too imperative to admit of evasion: “ Officers of the Regular Army shall not be competent to sit on courts-martial to try the officers or soldiers of other forces.” It admits of but one interpretation and of no exception. The president of the court was a lieutenant in the Regular Army. While he was temporarily doing duty as a lieutenant-colonel of the volunteer forces he was promoted in the Regular Army; and the fact that he was also doing duty as an officer in a volunteer regiment does not authorize the court to say that he was not an officer of the Regular Army. The court is of the opinion that the competency of this member of the court could not be conferred by the waiver of personal objections, and that he was an officer of the Regular Army within the intent of the statute.
The other questions in the case have been argued with most praiseworthy care and elaboration. Some of them are of great importance, but in view of the fact that the proceedings were void ab initio, that there was in fact no court present, competent to try the claimant for his alleged offense, it is inadvisable that this court proceed further with the case.
The claimant seeks to recover pay from the time he was dismissed under the sentence of the court-martial to the present time. He grounds this supposed right partly on the fact that he applied to the War Department for an honorable discharge, and that it was refused. But when he so applied he had been dismissed from the Army, and the ground of his dismissal appearing on the record of the Department as honorable or dishonorable would not affect his right to recover the pay of which he had been illegally deprived. It seems plain to the court that when the regiment, with all of its officers and men, was mustered out of the service the muster out was the dissolution of the regiment and of every office in and connected with it. From that time there was no office for the claimant to hold and no salary to which he could be entitled. The recovery, there *284 fore, must be limited to a recovery of the officer’s pay from and including February 18, 1899, up to the time of the'final muster out of the regiment, May 25, 1899, both inclusive, amounting to $404.12.